IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Crim. No. 1:16-CR-0018** |
| | : | |
| **v.** | : | |
| | : | |
| | : | **Judge Sylvia H. Rambo** |
| **TYSON BAKER** | : | |

## M E M O R A N D U M

Defendant was indicted on several federal charges related to his alleged taking of suspected proceeds from illegal narcotics sales that should have been seized as evidence by either state or federal law enforcement agencies.  Presently before the court is Defendant's motion to dismiss all counts in his indictment for lack of subject matter jurisdiction and for violation of his due process rights through outrageous governmental conduct.   For the reasons stated herein, Defendant's motion to dismiss will be granted in part and denied in part.

## I.   Background

### A.   Facts

Defendant was employed as a police officer by the Fairview Township Police Department, located in York County, Pennsylvania, for seventeen years. (Doc. 25, ¶ 1.)  At various times during his tenure as a police officer, Defendant worked on drug investigations as part of the York County Drug Task Force in conjunction with various local, state, and federal agencies, including the Drug

Enforcement Administration and the Federal Bureau of Investigation ("FBI"). (*Id*.)

On or about May of 2015, Defendant approached another Fairview Township police officer who, unbeknownst to Defendant, was working as a confidential informant for the FBI, and proposed that the two of them stop vehicles they suspected of trafficking narcotics and steal whatever drug proceeds those vehicles contained. (*Id*. at ¶ 2.) Defendant made the same proposal to the confidential informant in August of 2015, and on September 4, 2015, the confidential informant recorded a conversation between himself and Defendant in which Defendant again expressed his intention to steal drug proceeds from traffickers during traffic stops. (*Id*. at ¶¶ 3-4.)

On November 20, 2015, Defendant and the confidential informant participated in a search, pursuant to a warrant, of a home and a person leaving the home that lead to the recovery of multiple pounds of marijuana and $14,092 in cash. (*Id*. at ¶¶ 5-6, 11.) Defendant recommended that the individual arrested pursuant to the search be released without criminal charges and directed the confidential informant to take $2,000 out of the seized cash for the two of them to split equally. (*Id*. at ¶¶ 9-10.) Defendant then prepared a false report which stated that only $12,092 was seized during the search. (*Id*. at ¶ 11.) Five days later, the confidential informant recorded a telephone call with Defendant, confirming that

he had received his $1,000 share of the cash, and Defendant also stated that he stole a pair of headphones during the search of the home.  (*Id*. at ¶ 12.)

On December 16, 2015, while Defendant and the confidential informant were working the same shift, the FBI conducted an undercover operation targeted at Defendant in which an FBI agent posed as a drug trafficker traveling through Fairview Township with a backpack containing $15,000 in cash and 400 oxycontin pills.  (*Id*. at ¶¶ 13-14.)  The confidential informant made a traffic stop of the vehicle, which was outfitted with recording devices, called for backup through York County dispatch, and Defendant arrived on the scene shortly thereafter.  (*Id*. at ¶ 13.)  The undercover FBI agent provided a fictitious name that corresponded with the name on a likewise fictitious federal warrant, and another FBI agent spoke with Defendant via telephone and instructed him not to search the vehicle because it was part of an FBI investigation.  (*Id*. at ¶ 16.)  Despite this instruction from the FBI, Defendant had the vehicle towed to a nearby garage and proceeded to search the vehicle.  (*Id*. at ¶ 17.)  During his warrantless search of the vehicle, Defendant discovered and removed one of the hidden cameras, found the cash, and stole $3,000 of it.  (*Id*.)  Defendant then gave $1,000 of the stolen money to the confidential informant, who returned the money to the FBI.  (*Id*.)  Defendant never submitted as evidence any of the cash or the camera that he removed from the vehicle.  (*Id*. at ¶ 19.)

### B.    Procedural History

On December 18, 2015, Defendant was arrested and subsequently placed on home detention after waiving his right to a preliminary hearing.  (Doc. 19.)  On January 27, 2016, a grand jury returned an eight-count indictment against Defendant related to his illegal seizure and retention of property subject to federal investigation or seizure in violation of 18 U.S.C. § 2232 (Counts 1 & 2); creating a false report in violation of 18 U.S.C. § 1512(c)(2) (Counts 3 & 4); impeding a drug trafficking investigation by a federal agency in violation of 18 U.S.C. § 1519 (Counts 5 & 6); stealing property belonging to a federal agency in violation of 18 U.S.C. § 641 (Count 7); and making a false, fictitious, or fraudulent statement regarding a matter within the jurisdiction of the executive branch of the United States Government in violation of 18 U.S.C. § 1001 (Count 8).  (*See* Doc. 25.)

Defendant pleaded not guilty to all charges in the indictment on February 9, 2016.  (Doc. 31.)  On March 31, 2016, Defendant filed a motion to dismiss for lack of jurisdiction as well as outrageous governmental conduct (Doc. 40), followed by a brief in support thereof on April 13, 2016 (Doc. 43).  The Government filed its opposition to the motion to dismiss on May 2, 2016 (Doc. 46), and Defendant replied on May 16, 2016 (Doc. 51).  Accordingly, the motion has been fully briefed and is ripe for disposition.

## II.   <u>Legal Standard</u>

"An indictment is an accusation only, and its purpose is to identify the defendant's alleged offense . . . and fully inform the accused of the nature of the charges so as to enable him to prepare any defense he might have." *United States v. Stansfield*, 171 F.3d 806, 812 (3d Cir. 1999) (quotations and citations omitted). A defendant, however, may move to dismiss an indictment based on defects in the indictment, lack of jurisdiction, or failure to charge an offense. *See* Fed. R. Crim. P. 12(b)(2), (3)(B).

An indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge [against him,] and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *accord United States v. Cefaratti*, 221 F.3d 502, 507 (3d Cir. 2000) ("An indictment . . . to be sufficient must contain all essential elements of the charged offense."). However, an indictment "fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002). In other words, the facts in the indictment must satisfy the elements of the underlying criminal statute. *Id.* at 684.

Finally, "[i]n considering a defense motion to dismiss an indictment, the district court [must] accept[ ] as true the factual allegations set forth in the indictment." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (quoting *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)) (alterations in original). If the allegations in the indictment do not suffice to state an offense, Rule 12(b)(3)(B) authorizes dismissal; however, "dismissal[ ] may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000) ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.").

## III.   Discussion

Defendant has moved to dismiss all counts in the indictment on the basis that there is no federal jurisdiction, and has moved to dismiss Counts 1, 3, and 5 on the alternative basis of outrageous governmental conduct. (*See* Doc. 40.) The Government argues in opposition that there is a federal interest supporting each count and that there was no outrageous conduct involved in the FBI's investigation into Defendant's alleged illegal conduct. (*See* Doc. 46.) The court will address Defendant's arguments in turn.

### A.   <u>Has the Government Stated Federal Causes of Action?</u>

#### 1.   **Counts 1 & 2**

Counts 1 and 2 of the indictment charge Defendant with knowingly taking and transferring monies for the purpose of preventing and impairing the Government's lawful authority to take such property into its custody and control in violation of 18 U.S.C. § 2232.  (*See* Doc. 25, pp. 11-12.)  Count 1 is based upon Defendant's actions on or about November 21, 2015, wherein he is alleged to have taken $2,000 from the $14,902 that was seized subject to a search warrant obtained by the confidential informant.  Count 2 is based upon the allegation that Defendant took $3,000 of the $15,000 in cash that was placed in a backpack inside a vehicle by the FBI during its undercover operation targeted at Defendant on December 16, 2015.

Defendant argues that he had no knowledge of a potential federal seizure in the investigation upon which Count 1 is based, as only Pennsylvania state law enforcement agencies were involved, and that in fact no federal seizure would have occurred.  (Doc. 43, pp. 3-4.)  However, courts have not imputed a knowledge of federal involvement as a necessary element for charges brought under similar statutes to 18 U.S.C. § 2232.  Specifically, the Third Circuit has held that 18 U.S.C. § 1519, which makes illegal the knowing falsification of any document with the intent to impede an investigation that is within the jurisdiction of an

agency of the United States Government, does not require a defendant to know that a federal agency is involved in an investigation. *See United States v. Moyer*, 674 F.3d 192, 209 (3d Cir. 2012). Rather, a defendant has violated § 1519 if he knowingly falsifies a document with the intent to impede an investigation into any matter, and that matter happens to be within federal jurisdiction. *See id*. Similarly, § 2232 prohibits the knowing transfer or taking of any action with regard to property subject to seizure with the intent to prevent the seizure or retention of such property by the Government. *See* 18 U.S.C. § 2232(a). The relevant conduct for a violation of § 2232 is taking action to prevent the lawful seizure of property, not knowledge that such seizure will be done by federal rather than state authorities. Even if knowledge of potential federal involvement were required, although Defendant was cooperating in a warranted search as part of a state, rather than federal, investigation, he was a police officer experienced in handling drug investigations and, as such, knew that drug traffickers often travel across state lines and that investigations that start out at the local or state level often lead to federal charges. Further, a federal seizure was likely to occur both because of the possibility of the underlying drug investigation leading to federal charges and the fact that Defendant was already under investigation by the FBI for his own illicit activities, an investigation for which the stolen cash would have been relevant

evidence.   Therefore, the court finds that the indictment has properly charged Defendant with a violation of § 2232 in Count 1.

As to Count 2, Defendant has no valid basis upon which to claim that the indictment does not properly allege that he violated § 2232 in relation to the events of December 16, 2015.  Not only did the confidential informant tell Defendant that the individual who was stopped had a federal warrant out for his arrest, an FBI agent spoke with Defendant via telephone to notify him that the individual was under FBI investigation and instructed Defendant not to search the vehicle. Defendant's subsequent search of the vehicle and removal of cash and a video camera was clearly done with his knowledge that the FBI was going to search the vehicle and take lawful custody of any evidence.  Accordingly, Count 2 of the indictment sufficiently charges Defendant with a violation of § 2232.

### 2.   Counts 3 & 4

Counts 3 and 4 of the indictment charge Defendant with violations of 18 U.S.C. § 1512(c)(2) for obstruction of an official proceeding.  Defendant is alleged to have obstructed or attempted to obstruct an official proceeding by stealing drug proceeds on November 20, 2015 and December 16, 2015.  Defendant argues that the state proceedings and FBI investigation into Defendant were not "official proceedings" as contemplated by the statute.  The Government argues in response that the official proceeding related to Count 3 was the federal grand jury that

opened the investigation into Defendant's corrupt activities, and the official proceeding to support Count 4 was the federal grand jury that would have commenced had the undercover operation been as it appeared to Defendant.

For purposes of § 1512, an "official proceeding" is defined as "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A). The Supreme Court has held that to satisfy the "official proceeding" requirement under other subsections of § 1512, the Government must show a "nexus" between the defendant's conduct and a particular proceeding. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-08 (2005) (applying the nexus requirement to § 1512(b)). "To meet that nexus requirement, the Government must prove that the defendant 'ha[d] in contemplation [a] particular official proceeding' when he or she attempted to interfere with evidence." *See United States v. Shavers*, 693 F.3d 363, 377 (3d Cir. 2012), *judgment vacated on other grounds*, 133 S. Ct. 2877 (2013) (quoting *Arthur Andersen*, 544 U.S. at 708) (alterations in original). However, the "proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). "Thus, the defendant 'must believe that his actions are likely to affect a particular, existing or foreseeable official proceeding.'" *Shavers*, 693 F.3d

at 378 (quoting *United States v. Kaplan*, 490 F.3d 110, 125 (2d Cir. 2007)) (citation omitted).  The same nexus requirement applies to alleged violations of § 1512(c).  *See United States v. Tyler*, 732 F.3d 241, 249-50 (3d Cir. 2013) ("[I]n any prosecution brought under a § 1512 provision charging obstruction of justice involving an 'official proceeding,' the government is required to prove a nexus between the defendant's conduct and a particular official proceeding before a judge or court of the United States that the defendant contemplated.") (citing *Arthur Andersen*, 544 U.S. at 708).

While it is true that the "official proceeding" need not be in existence at the time of Defendant's allegedly obstructive conduct, such a proceeding does need to eventually occur.  *See id*. at 250-51 (finding no nexus between the defendant's conduct and "a foreseeable particular federal proceeding" where conduct only impeded a state court proceeding).  There simply never was a federal proceeding that arose in relation to the evidence that Defendant allegedly stole during the November 20, 2015 search upon which Count 3 is based.  The court is not persuaded by the Government's argument that the federal grand jury that had commenced regarding Defendant's illicit activity was the required official proceeding, as Defendant had no reason to foresee that grand jury, and in fact apparently did not because he allegedly carried on his unlawful conduct for several months.  Even if Defendant had foreseen the grand jury, he did nothing to obstruct

it.  Instead, Defendant teed up the indictment by allegedly committing the very acts for which the grand jury would later charge him.  Likewise, the undercover operation upon which Count 4 is based could never have culminated in a federal grand jury for the underlying drug trafficking because it was a sting operation involving the FBI and the confidential informant, rather than a genuine instance of drug trafficking.  Again, Defendant's conduct during the sting operation did not obstruct the grand jury investigating Defendant; rather, his conduct culminated in the indictment being returned against him.  Thus, because there were never any underlying official proceedings that resulted from the events of November 20, 2015 and December 16, 2015, the Government has not met its burden of establishing a nexus between conduct of Defendant and a particular federal proceeding, and therefore Counts 3 and 4 will be dismissed.

### 3.    Counts 5 & 6

Counts 5 and 6 charge Defendant with making false reports in violation of 18 U.S.C. § 1519.  Defendant advances the same general argument for dismissal of these charges as with Counts 1 through 4, namely that there was no federal involvement, and therefore no violation of § 1519.  However, as discussed above in relation to Counts 1 and 2, the Third Circuit has held that § 1519 does not require a defendant to know that a federal agency is involved in an investigation, only that a defendant has knowingly falsified a document with the intent to impede

an investigation into any matter, and that matter happens to be within federal jurisdiction. *See Moyer*, 674 F.3d at 209.  Here, Defendant was being investigated by the FBI well before the events of November and December 2015 that support all of the counts in the indictment, and therefore any false reports to cover up his illegal activities, even in local or state police investigations, would also impede the FBI's investigation into his illicit conduct.   Additionally, with regard to the December undercover operation, Defendant was told by an FBI agent that the FBI was investigating the individual who was stopped, and Defendant clearly knew that taking evidence from the vehicle and falsely reporting the property seized would impede a federal investigation.  Accordingly, Counts 5 and 6 will not be dismissed.

### 4.    Count 7

Count 7 charges Defendant with theft of money belonging to the United States in violation of 18 U.S.C. § 641 in relation to his theft of money and a video camera from the vehicle he searched in December 2015.  Defendant argues that the Government has failed to state a claim for a violation of § 641 because the undercover operation had the appearance of a state investigation, and Defendant therefore could not have known that he was taking federal property. As with § 1519, however, such knowledge on the part of Defendant is not required for a violation of § 641. *See United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir. 1974); *see also United States v. Jeffery*, 631 F.3d 669, 675-76 (4th Cir. 2011)

13

(collecting cases); *United States v. Rehak*, 589 F.3d 965, 974-75 (8th Cir. 2009). That the property belonged to the federal government is a jurisdictional issue and not part of the relevant conduct for the offense.   Thus, the indictment has sufficiently alleged a violation of § 641 and Count 7 will not be dismissed.

### 5.   Count 8

Count 8 charges Defendant with making false statements in a matter within the jurisdiction of the executive branch in violation of 18 U.S.C. § 1001 in relation to the undercover operation in December 2015.   Defendant once again argues that the Government has failed to state a claim because the operation had the appearance of a state, rather than federal, investigation.   The argument again fails. A violation of § 1001 occurs when a defendant knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States.   *See* 18 U.S.C. § 1001(a).   As with the other statutes Defendant is alleged to have violated, that the matter is within the jurisdiction of the executive branch of the United States is a jurisdictional element rather than required as conduct to satisfy commission of the offense.   *United States v. Starnes*, 583 F.3d 196, 212 n.8 (3d Cir. 2009) (citing *United States v. Curran*, 20 F.3d 560, 567 (3d Cir. 1994)) ("[A § 1001] defendant need not be aware of the jurisdictional fact that the false statement or concealment is within the statutory

14

authority of a specific government agency.") (alterations in original).  The FBI is unquestionably part of the executive branch of the United States, and Defendant's belief that the investigation only involved state agencies is irrelevant. Accordingly, Count 7 will not be dismissed for failure to state a claim.

### B.    Was the Governmental Conduct Outrageous?

Defendant's final argument for dismissal is aimed at Counts 1, 3, and 5, which arise out of the warranted search in November 2015.  Defendant argues that the confidential informant who took the $2,000 in cash to be split between himself and Defendant committed a crime in doing so, which constitutes outrageous governmental conduct.  (*See* Doc. 43, pp. 7-8.)  The court disagrees.

In the Third Circuit, "a criminal defendant may raise a due process challenge to an indictment against [him] based on a claim that the government employed outrageous law enforcement investigative techniques."  *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998) (citing *United States v. Voigt*, 89 F.3d 1050, 1064 (3d Cir. 1996)).  "While continuing to recognize, in theory, the outrageousness defense, [the Third Circuit has] have nonetheless observed that, because of the extraordinary nature of the doctrine, the judiciary has been 'extremely hesitant' to uphold claims that law enforcement conduct violates the Due Process clause."  *Id.* at 230 (citations omitted).

In *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978), the Third Circuit upheld the outrageousness defense in a situation where an undercover operative created and carried out the entire illegal scheme.  The Court saw "no justifying social objective" for law enforcement to create new crimes solely to induce an individual into wrongdoing.  *Id*. at 379.  The case *sub judice* does not present such a situation, however.  It was Defendant who concocted the scheme to steal money and other property from drug dealers and who asked the confidential informant to participate in the scheme.  Likewise, it was Defendant who instructed the informant to take the cash and place $1,000 in Defendant's vehicle and keep $1,000 for himself.  The informant was already cooperating with the FBI in its investigation of Defendant, and he immediately turned the $1,000 that Defendant instructed him to keep over to the FBI.  Unlike Defendant's characterization of the events, the confidential informant committed no crime, and his conduct was far from outrageous.  *See Nolan-Cooper*, 155 F.3d at 235 (finding the government did not engage in outrageous conduct where an undercover agent engaged in a romantic and ultimately sexual relationship with the defendant).  Thus, the court finds that the FBI did not engage in any outrageous conduct in its investigative techniques, and Counts 1, 3, and 5 will not be dismissed on this basis.

**IV.**   <u>**Conclusion**</u>

For the reasons stated herein, the court finds that the Government has properly charged and stated a claim against Defendant with regard to Counts 1, 2, 5, 6, 7, and 8, but has failed to state claims in Counts 3 and 4 because there were no official proceedings that Defended obstructed.   Accordingly, Defendant's motion to dismiss will be granted as to Counts 3 and 4, and denied as to the balance of the counts.

An appropriate order will issue.

  s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: June 29, 2016

17