IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:16-CR-0018** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **TYSON BAKER** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Pursuant to a plea agreement, Defendant Tyson Baker pled guilty to two separate violations of 18 U.S.C. § 641 related to his alleged theft of drug trafficking proceeds. At sentencing, Defendant moved to withdraw his guilty plea as to one count and the court requested briefing from the parties. Defendant subsequently replaced court-appointed counsel with retained counsel. Presently before the court is Defendant's motion to reject the plea agreement and withdraw his guilty pleas as to both counts contained therein. For the reasons that follow, Defendant's motion will be granted.

## I. Background

### A. Relevant Facts & Procedural History

Defendant was employed as a police officer by the Fairview Township Police Department, located in York County, Pennsylvania, for seventeen years. (Doc. 25, ¶ 1.) At various times during his tenure as a police officer, Defendant worked on drug investigations as part of the York County Drug Task Force in

conjunction with various local, state, and federal agencies, including the Drug Enforcement Administration and the Federal Bureau of Investigation ("FBI"). (*Id*.)

According to the allegations contained in the Indictment, on or about May 2015, Defendant approached another Fairview Township police officer who, unbeknownst to Defendant, was working as a confidential informant for the FBI, and proposed that the two of them stop vehicles they suspected of trafficking narcotics and steal whatever drug proceeds those vehicles contained. (*Id*. at ¶ 2.) Defendant made the same proposal to the confidential informant in August of 2015, and on September 4, 2015, the confidential informant recorded a conversation between himself and Defendant in which Defendant again expressed his intention to steal drug proceeds from traffickers during traffic stops. (*Id*. at ¶¶ 3-4.)

It is further alleged that, late in the evening of November 20, 2015, Defendant and the confidential informant participated in a search, pursuant to a warrant, of a home and a person leaving the home that lead to the recovery of multiple pounds of marijuana and $14,092 in cash. (*Id*. at ¶¶ 5-6, 11.) On November 21, 2015, Defendant recommended that the individual arrested pursuant to the search be released without criminal charges and directed the confidential informant to take $2,000 out of the seized cash for the two of them to split equally. (*Id*. at ¶¶ 9-10.) Defendant then prepared a false report which stated that only

$12,092 was seized during the search. (*Id*. at ¶ 11.) Five days later, the confidential informant recorded a telephone call with Defendant, confirming that he had received his $1,000 share of the cash, and Defendant also stated that he stole a pair of headphones during the search of the home. (*Id*. at ¶ 12.)

On December 16, 2015, while Defendant and the confidential informant were working the same shift, the FBI conducted an undercover operation targeted at Defendant in which an FBI agent posed as a drug trafficker traveling through Fairview Township with a backpack containing $15,000 in cash and 400 oxycontin pills. (*Id*. at ¶¶ 13-14.) The confidential informant made a traffic stop of the vehicle, which was outfitted with recording devices, called for backup through York County dispatch, and Defendant arrived on the scene shortly thereafter. (*Id*. at ¶ 13.) The undercover FBI agent provided a fictitious name that corresponded with the name on a likewise fictitious federal warrant, and another FBI agent spoke with Defendant via telephone and instructed him not to search the vehicle because it was part of an FBI investigation. (*Id*. at ¶ 16.) Despite this instruction from the FBI, Defendant had the vehicle towed to a nearby garage and proceeded to search the vehicle. (*Id*. at ¶ 17.) During his warrantless search of the vehicle, Defendant discovered and removed one of the hidden cameras, found the cash, and stole $3,000 of it. (*Id*.) Defendant then gave $1,000 of the stolen money to the confidential informant, who returned the money to the FBI. (*Id*.) Defendant never

3

submitted as evidence any of the cash or the camera that he removed from the vehicle. (*Id*. at ¶ 19.)

On December 18, 2015, Defendant was arrested and subsequently placed on home detention after waiving his right to a preliminary hearing. (Doc. 19.) On January 27, 2016, a grand jury returned an eight-count Indictment against Defendant related to his illegal seizure and retention of property subject to federal investigation or seizure in violation of 18 U.S.C. § 2232 (Counts 1 & 2); creating a false report in violation of 18 U.S.C. § 1512(c)(2) (Counts 3 & 4); impeding a drug trafficking investigation by a federal agency in violation of 18 U.S.C. § 1519 (Counts 5 & 6); stealing property belonging to a federal agency in violation of 18 U.S.C. § 641 (Count 7); and making a false, fictitious, or fraudulent statement regarding a matter within the jurisdiction of the executive branch of the United States Government in violation of 18 U.S.C. § 1001 (Count 8). (*See* Doc. 25.)

Defendant pleaded not guilty to all charges in the Indictment on February 9, 2016. (Doc. 31.) On March 31, 2016, Defendant filed a motion to dismiss for lack of jurisdiction as well as outrageous governmental conduct (Doc. 40), and the court dismissed Counts 3 and 4 on the basis that there was no official proceeding that Defended obstructed. (*See* Docs. 56 & 57.) Trial in this matter was scheduled to begin on September 6, 2016. On September 2, 2016, the Government filed a Superseding Information, charging that Defendant "did knowingly counsel,

command, induce and procure the theft of $2,000.00 belonging to the United States and did receive, conceal and retain $1,000.00 of same with the intent to convert it to his own use and gain, knowing it to have been stolen," in violation of 18 U.S.C. §§ 2 and 641, arising out of the November 21, 2015 incident. (Doc. 68.) That same day, Defendant entered into a plea agreement with the Government, in which he agreed to plead guilty to Count 7 of the Indictment, "which charges [D]efendant with a violation of [18 U.S.C. §641] (theft of government property)," and "to a one count Information that will charge a violation of [18 U.S.C. § 641] (theft of government property)," in exchange for dismissal of the remaining counts in the Indictment. (Doc. 70, pp. 1-2.)

A change of plea hearing was held on September 6, 2016, at which the court accepted Defendant's guilty pleas to Count 7 of the Indictment and to the Superseding Information. At the change of plea hearing, Assistant United States Attorney William Behe reviewed the facts that the Government would present at trial in support of the Superseding Information as follows:

> MR. BEHE: Yes, Your Honor. The Defendant, Mr. Baker, had been employed as a police officer with the Fairview Township Police Department in York County for approximately 17 years. During his employment as a Fairview Township police officer, Mr. Baker had at times worked on the York County Drug Task Force and had worked drug investigations with various local, state, and federal agencies, to include the Drug Enforcement Administration and the Federal Bureau of Investigation.

Mr. Baker was entrusted with the investigation of criminal laws of the Commonwealth of Pennsylvania and assisted in the investigation of federal criminal laws primarily in the area of narcotics trafficking. He was authorized to carry a firearm and was empowered to make arrests and to conduct searches and seizures in furtherance of his duties to enforce the criminal laws.

In the spring and summer of 2015, Mr. Baker had conversations with a fellow Fairview Township police officer about stealing money from drug traffickers who might travel through Fairview Township. Mr. Baker did not realize that the officer who he was speaking with had approached the Federal Bureau of Investigation and agreed to be a confidential informant for them investigating allegations concerning Mr. Baker.

On September 4th of 2015, this individual and Mr. Baker had a conversation that was consensually recorded by the confidential informant in which Mr. Baker again expressed his desire to steal drug proceeds from drug traffickers that might come through the Township. This information deals with the offense that is charged in the information. The information is chronologically the first incident.

On November 20th of 2015, the confidential informant secured a search warrant from a local magistrate for a residence in the Township to search for drugs and drug proceeds. The confidential informant officer and other Fairview Township police officers had stopped an individual that was leaving a residence in the Township. A pat-down of that individual and a search of that person's vehicle led to the recovery of multiple pounds of marijuana and a large amount of United States currency in individual stacks comprised of hundreds and 50-dollar bills. Each stack totaled 1000 dollars.

The individual had been trafficking marijuana between Maryland and Pennsylvania in violation of both

federal and state criminal laws. Between approximately 10:30 and 11 p.m. that night, Mr. Baker and other shift change personnel arrived at the scene of the search for the purposes of assisting in the completion of the execution of the search warrant.

At that time, the confidential informant police officer and Baker had conversations about the money that was seized and how much might be there. Mr. Baker was supposed to take the individual to the York County Prison for processing and booking. However, he took the individual back to the Fairview Township Police Station to conduct an interview.

On the way to and during the interview, Mr. Baker asked the drug trafficker several times what the amount of money was that the individual believed to have been recovered during the search. He also asked the individual to state the amount of marijuana he had believed had been recovered during the search.

Following the interview, Mr. Baker recommended the release of this individual without the filing of criminal charges, and the alleged drug trafficker was released and taken home personally by Mr. Baker. Once Mr. Baker returned to the police station and he was alone with the cooperating police officer, he told the officer or asked the officer how many stacks, which means bundles of money, there were. And Mr. Baker then said to the other officer, minus two, meaning directing the officer to take two stacks or 2000 dollars.

The confidential informant then left the police department and proceeded to Mr. Baker's vehicle in the parking lot, as Mr. Baker had instructed him to do, and put 1000 dollars of that money in Mr. Baker's vehicle. The confidential informant officer later turned over to the FBI the 1000 dollars of the 2000 dollars that he had kept for himself. The amount of money seized during the search was approximately 14,902 dollars.

Mr. Baker admits by pleading guilty to this offense that the money that was seized would have been used as evidence by federal authorities and which would be subject to forfeiture and, therefore, property of the United States due to the composition of the York County Drug Task Force which was made up of federal, state, and local officers. So Mr. Baker kept 1000 dollars of that money for his own personal use. And that's what comprises the information.

(Doc. 93, pp. 11-14.)

In response to Mr. Behe's review of the facts underlying the charge, the court inquired of Defendant, who was represented by Attorney John Abom at the time, whether he agreed with the facts as recited. Specifically, the following exchange occurred:

THE COURT: Mr. Baker, did you on November 21, 2015, in Fairview Township, York County, assist in the arrest and seizure -- arrest of a Defendant and seizure of money confiscated from that person, and that you managed to take 1000 dollars of a stack of 2000 dollars? Correct?

MR. BEHE: There were two stacks, each of a thousand.

THE COURT: Two stacks of a thousand. And do you further agree that the total amount confiscated was 14,902 dollars and some odd cents that belonged to the agency of the FBI or the DEA that were doing that drug interception?

MR. BEHE: Well, Your Honor, this was a local investigation at the time, but the officer who was

assisting was part of the York County Drug Task Force, which is comprised of federal and state agencies.

MR. ABOM: Your Honor, I'd like to assist because I know that Mr. Baker --

THE COURT: My concern is, it has to be money that fell under the federal statute, which means that a federal agency was involved or it belonged to a federal agency.

MR. BEHE: Well, it was part of the York County Drug Task Force, which is comprised of those agencies. And Mr. Baker here, at least that's what is represented, is prepared to acknowledge that would have been federal funds because of the nature of the investigation.

MR. ABOM: Or could have been federal funds. I want to be clear, because Mr. Behe said it was going to be. And I don't know that. And I don't know that the federal government was going to be involved. But I will concede for the purposes of jurisdiction in the plea today that it could have been federal funds. So that is the statement on that. With regard, Your Honor, you asked multiple facts about that situation today. And I think Mr. Baker will admit to the facts of the crime. There were a couple facts, like were you involved in the arrest of the Defendant, were you involved in the seizure of the money –

THE COURT: Do you have any dispute with the major facts recited by Mr. Behe?

THE DEFENDANT: Excuse me, Your Honor. I do acknowledge that I received a thousand dollars that was turned over to me by the confidential informant.

THE COURT: And do you agree that that was money that could have been used by the federal government in a prosecution?

THE DEFENDANT: Yes, ma'am.

9

THE COURT: Satisfied?

MR. ABOM: Yes, Your Honor.

(Doc. 93, pp. 14-16.)

A presentence investigation report was prepared by Defendant's probation officer, and both Defendant and the Government filed sentencing memorandums. (Docs. 92 & 94.) Attached to Defendant's sentencing memorandum was a letter written by him, which stated, in relevant part:

> In November 2015, a Confidential Informant (CI) who is a Police Officer stole money and placed the stolen money in my personal vehicle. I did not orchestrate, suggest, or plan any money being taken and was not present when it [was] taken *nor even knew it was taken at that time*. It was placed in my vehicle; however I did not decline its acceptance. I accept responsibility for receiving this money.

(Doc. 92-1, p. 3 (emphasis supplied).) At the sentencing hearing on January 17, 2017, the court asked Defendant whether the statement in his letter was tantamount to him rejecting the elements of the offense in the Superseding Information, and if so, whether Defendant was requesting to withdraw his guilty plea to that charge. (*See* Doc. 97, pp. 2-3.) After a lengthy recess, Defendant stated his request to withdraw his guilty plea. (*Id*. at p. 5.) The court deferred ruling on Defendant's request to allow the Government an opportunity to decide how it wanted to proceed.

After counsel for Defendant filed a written motion to withdraw Defendant's guilty plea as to Count 7 of the Indictment (Doc. 102), Defendant retained attorney Jack J. McMahon as new counsel and Mr. Abom withdrew from this case. On March 1, 2017, Attorney McMahon filed a brief in support of Defendant's motion to withdraw his guilty plea (Doc. 110), the Government filed its opposition on March 13, 2017 (Doc. 113), and Defendant replied on March 17, 2017 (Doc. 115). Thus, the motion has been fully briefed and is ripe for disposition.

## II.   **Legal Standard**

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant must demonstrate a "fair and just reason" to withdraw his guilty plea after it has been accepted by the court. The relevant factors for determining if the withdrawal of the guilty plea is fair and just are: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).  "This analysis requires that a district court consider each factor, but critically, does not make any one mandatory such that failure to establish one will necessarily dictate rejection of the motion." *United States v. Wilder*, 134 F. App'x 527, 528 (3d Cir. 2005).

Although motions to withdraw guilty pleas made before sentencing should be freely granted, *Government of V.I. v. Berry*, 631 F.2d 214, 219 (3d Cir. 1980),

the defendant carries a substantial burden to demonstrate a fair and just reason for the withdrawal, *Jones*, 336 F.3d at 252.  The defendant's heavy burden reflects the notion that, "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001); *see also United States v. Hyde*, 520 U.S. 620, 676 (1997) ("After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea, [the defendant cannot] withdraw a guilty plea simply on a lark."). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown*, 250 F.3d at 815. Ultimately, whether to allow a defendant to withdraw a guilty plea is within the sound discretion of the court and requires consideration of the facts and circumstances in each case. *United States v. Crowley*, 529 F.2d 1066, 1071 (3d Cir. 1976); *United States v. Trott*, 779 F.2d 912, 915 (3d Cir. 1985).

## III.   Discussion

Defendant argues in support of his request to withdraw his guilty pleas and be released from the plea agreement that he is innocent of the charge in the Superseding Information, and it would be unjust to bind him to his guilty plea to

Count 7 of the Indictment while allowing him to withdraw his other guilty plea because he would lose the benefit of the bargain of the plea agreement. (*See* Doc. 110.) The Government argues in response that Defendant has not properly asserted a claim of actual innocence as to the charge in the Superseding Information, and that even if he could, he is nonetheless in breach of the terms of the plea agreement, which provides that he may not withdraw either of his guilty pleas. (*See* Doc. 113.) The court will first consider the factors required to establish a fair and just reason for allowing Defendant to withdraw his guilty plea under Rule 11(d)(2)(B) before turning to the Government's argument regarding breach of the plea agreement.

### A.   <u>Withdrawal of Guilty Plea</u>

#### 1.   **Actual Innocence**

Defendant's motion to withdraw his guilty plea to the Superseding Information is based upon his claim that he is actually innocent of the offense charged. The Third Circuit has repeatedly stated that "bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *See, e.g.*, *United States v. Johnson*, 491 F. App'x 326, 329 (3d Cir. 2012) (citing *Jones*, 336 F.3d at 252). Instead, "assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Id.* (citing *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001)).   Importantly, the court is cognizant that "[a]n assertion of

innocence by the defendant weighs heavily in favor of granting a plea withdrawal motion if the assertion is credible." *United States v. Bruno*, Crim. No. 3:11-cr-0015, 2014 WL 2895415, *7 (W.D. Pa. June 25, 2014) (citing *Gov't of Virgin Islands v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980)).

At the change of plea hearing, the court attempted to resolve the potential disagreement between counsel regarding the federal nature of the stolen funds relevant to the charge in the Superseding Information. This attempt lead to what the court believes was a critical oversight in accepting Defendant's guilty plea, which is that Defendant did not himself admit to facts requisite to meet the elements of the offense charged.

While the Superseding Information charges that Defendant "did knowingly counsel, command, induce and procure the theft of $2,000.00 belonging to the United States and did receive, conceal and retain $1,000.00 of same with the intent to convert it to his own use and gain, knowing it to have been stolen," in violation of 18 U.S.C. §§ 2 and 641, the plea agreement involves Defendant pleading guilty only to a violation of 18 U.S.C. § 641. (*See* Doc. 70, p. 2.) Importantly, § 641 reads, in relevant part, as follows:

> Whoever receives, conceals, or retains [any record, voucher, money, or thing of value of the United States or of any department or agency thereof] with intent to convert it to his use or gain, *knowing it to have been embezzled, stolen, purloined or converted* –

> Shall be fined under this title or imprisoned not more
> than ten years, or both.

18 U.S.C. § 641 (emphasis supplied). Significantly, Defendant did not admit that he knew at the time of receipt that the money was stolen. During the plea colloquy, the court observed Defendant to be hesitant and gesturing as if he had some reservation about, or disagreement with, the facts as stated by the Government. While the court believed Defendant's disagreement to be with the federal nature of the funds in question, it became clear upon receipt of Defendant's letter attached to his sentencing memorandum that what he actually disputes is his role in the offense charged. (*See* Doc. 92-1, p. 3 ("I did not orchestrate, suggest, or plan any money being taken and was not present when it [was] taken nor even knew it was taken at that time.").)

Federal Rule of Criminal Procedure 11(b)(3) requires the court to establish the factual basis for a guilty plea on the record. The purpose of this requirement is to ensure that the court satisfy itself through inquiry:

> that the conduct which the defendant admits constitutes
> the offense charged in the indictment or information or
> an offense included therein to which the defendant has
> pleaded guilty. Such inquiry should, e.g., protect a
> defendant who is in the position of pleading voluntarily
> with an understanding of the nature of the charge but
> without realizing that his conduct does not actually fall
> within the charge.

Fed. R. Crim. P. 11 advisory committee's note to 1966 amendment. Here, while the attorney for the Government offered the factual basis, Defendant was never asked during the plea colloquy if he agreed with the specific facts needed to charge him with the count contained in the Superseding Information – namely, at the very least, whether he knew the money was stolen when he received it. Because Defendant's body language and the answer he did provide suggested that he disagreed with the facts as recited by the Government, the court should have directly inquired of him whether his conduct properly fell within the charge against him. Although change of plea hearings may often feel rote, they serve a vital role in establishing for the record that the defendant before the court is changing his or her plea voluntarily and intelligently. When a plea agreement is involved, it is the court's duty to establish not only that the defendant understands the essence and terms of the agreement, but also that there is no dispute with the material facts necessary to support the charges contained therein. *See United States v. Fountain*, 777 F.2d 351, 354-55 (7th Cir. 1985) ("Given the individual factual determination required for each case both the district judge who conducts the plea hearing and the prosecutor who accepts the plea have a special responsibility to assure that the hearing satisfies the requirements of Rule 11[,]" because "[w]hile guilty pleas serve a vital role in the judicial processing of criminal defendants, it must be remembered that those persons who plea are sacrificing, albeit voluntarily,

16

important constitutional protections.") (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Under the facts and circumstances present here, the court is simply no longer satisfied that the conduct to which Defendant admits constitutes a violation of the § 641 offense charged in the Superseding Information. Defendant's consistent refusal, even at the plea hearing, to admit to certain facts is consistent with his claim of actual innocence. Accordingly, the court finds this factor weighs in favor of allowing withdrawal of his guilty plea.

### 2.    Strength of Reasons for Withdrawing the Plea

In order to establish the strength of his reasons for withdrawing his plea, Defendant must "give sufficient reasons to explain why contradictory positions were taken before the district court." *Jones*, 336 F.3d at 253. Here, Defendant does not appear to have contradicted himself before the court. Although he signed the plea agreement, when it came time for Defendant to admit to the necessary facts at the change of plea hearing, he balked, and merely admitted to receiving the money. He then repeated that position in his subsequent letter to the court and clarified that he had no knowledge the money was stolen. It appears that Defendant believed throughout the plea negotiation process that he was admitting to receiving money that he *later* found out to be stolen, or at least that is the consistent position he has taken before the court. When the court finally understood this to be his position, he was asked whether he wanted to withdraw his plea and he indicated he did.

Therefore, the second factor also weighs in favor of allowing Defendant to withdraw his guilty plea.

### 3.     Prejudice to the Government

The last consideration for the court is whether and to what extent the Government would be prejudiced by allowing Defendant to withdraw his guilty plea. The only potential prejudice asserted by the Government is that it will have to call its undercover officer to testify at trial, which would have been avoided by the guilty plea, and that allowing the withdrawal will have a negative effect on the legal system. The court finds any prejudice resulting from the Government calling a local undercover police officer to testify at trial to be minimal. The court likewise finds that there would be no negative effect on the legal system by allowing the withdrawal of the guilty plea under the unique set of circumstances presented in this case. Defendant apparently did not appreciate the nature of the charge against him and denies that his conduct actually falls within the charge. Accordingly, the court finds that the third factor, along with the first two, also weighs in favor of allowing Defendant to withdraw his guilty plea.

### B. <u>Breach of Plea Agreement</u>

The Government contends that, even if the court accepts Defendant's assertion of actual innocence, it should nonetheless refuse to allow him to withdraw his guilty pleas because such action would constitute a breach of the plea

agreement, which Defendant signed. The plea agreement states that if the Government "believes the [D]efendant has failed to fulfill any obligations under this Agreement," and therefore breached the agreement, then "[D]efendant will not be permitted to withdraw any guilty plea tendered under this Agreement and agrees not to petition for the withdrawal of any guilty plea." (Doc. 70, p. 16.)

The Government has not stated what obligations it believes Defendant has failed to fulfill. Rather, the Government is arguing that the attempted withdrawal of the guilty plea is the act constituting the breach. This is circular reasoning: the consequences of a breach cannot also constitute the breach itself. The plea agreement details certain obligations of Defendant, of which his failure to fulfill would result in a breach of the agreement, such as to: pay all fines imposed by the court; pay a special assessment; disclose all assets; submit to interviews by the Government regarding financial status; and to submit other financial information requested by the Government. The plea agreement also provides that any potential breach "shall be determined by the court in an appropriate proceeding at which the United States shall be required to establish any breach by a preponderance of the evidence." (*Id*.) The Government has not put forth any such evidence, much less a preponderance. Thus, the court finds that, under the circumstances presented here, Defendant's request to withdraw his guilty plea is not, in and of itself, a breach of

the plea agreement, and the court will allow Defendant to withdraw his guilty plea to the Superseding Information.

The question now becomes whether the court should bind Defendant by the remainder of the plea agreement – in which he pleaded guilty to Count 7 of the Indictment – after allowing withdrawal of his guilty plea to the Superseding Information. The court finds that it would be error to do so. "A plea agreement is a unified document, and even if the district court wanted to it could not accept part and reject part." *United States v. Martin*, 287 F.3d 609, 622 (7th Cir. 2002) (citing *United States v. Peterson*, 268 F.3d 533, 534 (7th Cir. 2001)) ("The whole plea agreement stands, or the whole thing falls."). The court agrees that Defendant would lose the benefit of his bargain of entering into the plea agreement by binding him to only part of it as the Government requests. Accordingly, the court will reject the plea agreement in its entirety and allow the withdrawal of Defendant's guilty plea to Count 7 of the Indictment.

## IV.   <u>Conclusion</u>

For the reasons stated herein, the court finds that Defendant has genuinely asserted his innocence to the charge in the Superseding Information, has not taken truly contradictory positions before the court, and that the Government will not suffer substantial prejudice in permitting Defendant to withdraw his guilty plea. Because Defendant has established a fair and just reason to allow the withdrawal of

one of two guilty pleas contained in the plea agreement, the court will reject the plea agreement and allow Defendant to withdraw his guilty plea to Count 7 of the Indictment. This case has languished long enough without a resolution, and the court will schedule trial to commence as soon as practicable.

An appropriate order will issue.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: March 23, 2017